NO. 16-1357

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

ALDMYR SYSTEMS, INC., ET AL.

APPELLANTS

V.

STEPHEN FRIEDMAN, ET AL.

APPELLEES

Appeal from the United States District Court for the District of Maryland
Case No. 8:15-cv-00864-PJM
(Honorable Peter J. Messitte, Judge)

BRIEF OF APPELLEES STEPHEN FRIEDMAN AND JOSEPH, GREENWALD
& LAAKE, P.A.

Shirlie Lake, Esq. (Fed. Bar No. 01705)
Daniel R. Hodges, Esq. (Fed. Bar No. (28252)
ECCLESTON & WOLF, P.C.
7240 Parkway Drive
Fourth Floor
Hanover, MD 21076
Tel: (410) 752-7474
Fax: (410) 752-0611
lake@ewmd.com
hodges@ewmd.com
*Attorneys for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 16-1357        Caption: Aldmyr Systems, Inc., et al. v. Stephen A. Friedman, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Joseph, Greenwald & Laake, P.A.
(name of party/amicus)


who is _____ an Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                          ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                           ☐ YES ☑ NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☑YES ☐NO
     If yes, identify entity and nature of interest:

     XL Insurance America, Inc. is the insurer for the Appellees

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                         ☐YES ☑NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: _____              Date: _____April 1, 2016_____

Counsel for: Appellees _____

## CERTIFICATE OF SERVICE
***************************

I certify that on _____April 1, 2016_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

James Chandler, Esq.
Chandler Law Firm
1815 Pennsylvania Ave, NW
Suite 185
Washington, DC 20006

_____                         _____April 1, 2016_____
      (signature)                                        (date)

- 2 -

# TABLE OF CONTENTS

**Page No**.

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ............................................................... iii

ISSUES PRESENTED ........................................................................ 1

STATEMENT OF THE CASE ............................................................ 1

SUMMARY OF ARGUMENT ............................................................ 7

ARGUMENT ...................................................................................... 8

    A.   The United States District Court for the District of
         Maryland Correctly Granted the JGL Defendants'
         Motion to Dismiss ................................................................ 8

         1.  Standard of Review ............................................................. 8

         2.  The United States District Court Properly Declined to
            Exercise Jurisdiction Over This Action ................................ 9

         3.  Dismissal Was Also Proper as Plaintiffs' Complaint
            Failed to State a Claim for Copyright Infringement or
            Misappropriation of Trade Secrets ...................................... 13

              (a) Copyright Infringement ................................................ 13

              (b) Misappropriation of Trade Secrets ................................ 17

    B.   Plaintiffs Are Not Entitled to Summary Judgment ................ 19

    C.   The United States District Court Correctly Granted the
         JGL Defendants' Rule 11 Motion for Sanctions .................... 22

         1.  Standard of Review ............................................................ 22

2. The Rule 11 Sanctions Entered by the District
   Court were Warranted ........................................................ 23

3. Sanctions Were Property Entered Against Plaintiffs,
   Their Counsel and Their Majority Owner and
   CEO, Donald Bailey ......................................................... 26

4. The Award of $22,834.40 was Appropriate, Given
   Plaintiffs'/Mr. Bailey's Conduct, the Purpose of
   Rule 11 and the Reasonableness of the Fees Sought ......... 28

CONCLUSION .................................................................................... 29

CERTIFICATE OF SERVICE .......................................................... 30

# TABLE OF AUTHORITIES

## Cases

*Ankenbrandt v. Richards*, 504 U.S. 689 (1992)    12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)    8,9

*Bell Atlantic Corp., v. Twombly*, 550 U.S. 544 (2007)    8

*Bond v. Blum*, 317 F.3d 385 (4th Cir. 2003)    16

*Bouchat v. Baltimore Ravens Ltd. P'ship*, 619 F.3d 301 (4th Cir. 2010)    14, 15

*Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194 (4th Cir. 2000)    10

*Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569 (1994)    14

*Cole v. Cole*, 633 F.2d 1083 (4th Cir. 1980)    12

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)    22

*Cruz v. Maypa,* 773 F.3d. 138 (4th Cir. 2014)    8

*Davani v. Virginia Dept. of Transp.*, 434 F.3d 712 (4th Cir. 2006)    9

*District of Columbia Ct. App. v. Feldman*, 460 U.S. 462 (1983)    9

*DuBroff v. DuBroff*, 833 F.2d 557 (5th Cir. 1987)    12

*Dunn v. Cometa*, 238 F.3d 38 (1st Cir. 2001)    12

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005)    9

*Friedman's Inc. v. Dunlap*, 290 F.3d 191 (4th Cir. 2002)    9

*Gallagher Evelius & Jones, LLP v. Joppa Drive-Thru, Inc.,* 195 Md. App. 583, 7 A.3d 160 (2010)    12

*Hughes v. Progressive Direct Ins. Co., Inc.*, 2012 WL 4480726 (D. Md. September 27, 2012)    19

*Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144 (4th Cir. 2002)                23

*Ibarra v. United States*, 120 F.3d 472 (4th Cir. 1997)                            20

*Jartech v. Clancy*, 666 F.2d 403 (9th Cir. 1982)                                    16

*Jordahl v. Democratic Party of Va.*, 122 F.3d 191 (4th Cir. 2002)           9

*LeJeune v. Coin Accpetors, Inc.*, 381 Md. 288, 849 A.2d 451 (2004)         18

*Mansell v. Mansell*, 490 U.S. 581 (1989)                                            12

*Mathis v. Goldberg*, 538 Fed. App'x. 310 (4th Cir. 2013)                       9

*Miltier v. Downs*, 935 F.2d 660 (4th Cir. 1991)                                22, 23

*Myers v. Sessoms & Rogers, P.A.*, 781 F. Supp. 2d 264 (E.D.N.C. 2011)     23

*Newport News Holdings Corp. v. Virtual City Vision, Inc.*,                     27
650 F.3d 423 (4th Cir. 2011)

*Presley v. City of Charlottesville*, 464 F.3d 480 (4th Cir. 2006)            19

*Plyler v. Moore*, 129 F.3d 728 (4th Cir. 1997)                                 9, 10

*Rooker v. Fidelity Trust*, 263 U.S. 413 (1923)                                   9

*Stern v. Does*, 978 F. Supp. 2d 1031 (C.D. Cal. 2011)                         16

*Stern v. Weinstein*, 512 F. App'x 701 (9th Cir. 2013)                         16

*Straitwell v. National Steel Corp.*, 869 F.2d 248 (4th Cir. 1989)           22

*Sundeman v. Seajay Soc'y, Inc.*, 142 F.3d 194 (4th Cir.1998)               14

*Turloch v. Freech*, 275 F.3d. 391 (4th Cir. 2001)                              8

*Ty, Inc. v. Publications Intern. Ltd.*, 292 F.3d 512 (7th Cir. 2002)         17

*Washington v. Wilmore*, 407 F.3d 274 (4th Cir. 2005)                         10

## **STATUTES**

17 U.S.C.A § 107                                              7, 13-14
18 U.S.C.A § 1832                                                   2
28 U.S.C.A § 1257                                                  9
Md. Code Ann. Com. Law §§ 11-1201 – 11-1209       7, 17, 18

## **RULES**

Federal Rule of Civil Procedure 11                          *passim*

## I.    ISSUES PRESENTED

(1)    Did the United States District Court for the District of Maryland (J. Messitte) correctly grant Appellees Stephen Friedman's and Joseph, Greenwald & Laake, P.A.'s (hereinafter collectively referred to as the "JGL Defendants") Motion to Dismiss Appellants Aldmyr Systems, Inc.'s and Zegato Solutions, Inc.'s (hereinafter collectively referred to as the "Plaintiffs") Complaint?

(2)    Did the United States District Court for the District of Maryland correctly grant the JGL Defendants' Rule 11 Motion for Sanctions?

## II.    STATEMENT OF THE CASE

The genesis of this litigation is a divorce action between Donald Bailey and his wife, Geraldine Bailey (*Bailey v. Bailey*, Circuit Court of Anne Arundel County, Case No. 02-C-14-186729, hereinafter referred to as the "Divorce Litigation"). (A. 51-60). Ms. Bailey was represented by the JGL Defendants. *Id.* Specifically, on October 30, 2014, Mr. Bailey filed a Motion for Protective Order and to Quash Subpoenas *Duces Tecum* to Protect Trade Secrets, Confidential Information and Proprietary Information in the Divorce Litigation (A. 137-44), which was opposed by the JGL Defendants (A. 145-264) and ultimately denied by the Circuit Court for Anne Arundel County on November 25, 2014. (A. 265).

Two weeks later, on December 8, 2014, Mr. Bailey, acting through one of his companies, Zegato Travel Solutions, LLC, filed suit, in the United States

District Court for the District of Maryland, against Ms. Bailey and the JGL
Defendants (*Zegato Travel Solutions, LLC v. Bailey, et al.*, Case No. 8:14-cv-
03808-TDC, hereinafter referred to as the "First Federal Case"). (A. 61-62). Both
this case and the First Federal Case are based on the same operative facts, namely
that the JGL Defendants and Ms. Bailey allegedly misappropriated trade secrets
and copyrighted material during the course of the Divorce Litigation when they
copied records pertaining to Plaintiffs' business and computer programs after the
records were left in the marital home by Mr. Bailey, and subsequently produced
these same documents back to Mr. Bailey (through his divorce counsel, Mr.
Nugent) in responses to discovery requests. (A. 9-20, 273-83, 931).

The First Federal Case was dismissed, *sua sponte*, by Judge Theodore D.
Chuang, even before the JGL Defendants had to file a responsive pleading. (A. 61-
62, 268-71). Specifically, after a Show Cause Order was issued (A. 272) and an
Amended Complaint (A. 273-83) was filed, Judge Chuang dismissed the action,
finding that Plaintiff Zegato Travel Solutions, LLC, without justification, had
changed its alleged place of business in a botched effort to establish diversity
jurisdiction. (A. 268-71). Judge Chuang also held that 18 U.S.C. § 1832 does not
create a private cause of action and, therefore, there was no basis for federal
question jurisdiction. *Id.*

Thereafter, Mr. Bailey, this time acting through two of his other companies,

Plaintiffs Aldmyr Systems, Inc. and Zegato Solutions, Inc.,[1] filed the instant litigation, alleging Copyright Infringement (Count I) and Misappropriation of Trade Secrets (Count II). (A. 9-23). In response, the JGL Defendants filed a timely Motion to Dismiss, asserting that: (1) Plaintiffs lacked standing to sue for alleged copyright infringement, as the copyrights in question were exclusively owned by Mr. Bailey (in his individual capacity); (2) they did not, nor could they have, misappropriated trade secrets, as the information in question does not meet the statutory definition of a "trade secret," nor was it acquired through "improper means"; (3) the use of copyrighted material for litigation purposes constitutes a "fair use" which does not give rise to an infringement claim; and (4) given that the issues raised in the Complaint and in the Divorce Litigation are inextricably intertwined, the United States District Court for the District of Maryland should abstain from exercising jurisdiction so as to allow the state court to continue to oversee the domestic dispute and its discovery. (A. 31-50).

After Plaintiffs filed an Opposition to the Motion to Dismiss (which Plaintiffs did not include in the Record Extract) and the JGL Defendants filed a

---

[1] As set forth in Judge Messitte's Memorandum Opinion, there is uncertainty, caused by Mr. Bailey's and Plaintiffs' conflicting testimony and assertions, as to the exact amount of Mr. Bailey's ownership interests in the Plaintiffs. (A. 921-22). For example, in the instant case, Mr. Bailey alleged that he owns 90% of Plaintiff Aldmyr Systems, Inc., while in the Divorce Litigation he asserted that he owned 100% of this entity. *Id.* Regardless of the exact ownership percentages, it is undisputed that Mr. Bailey has "100% control" over the Plaintiffs. (A. 365).

Reply thereto (A. 63-70),[2] on August 3, 2015, a hearing took place, at the
conclusion of which Judge Messitte granted the JGL Defendants' Motion on the
grounds that abstention (i.e., the exercise of discretion not to assume subject matter
jurisdiction) was appropriate given the application of the *Rooker-Feldman* doctrine
and the fact that this case was, in essence, a side-bar to the Divorce Litigation and
the discovery disputes raised, and properly decided, therein.  (A. 383-87).

    With regard to the issue of sanctions, Judge Messitte stated during the
August 3, 2015, hearing that:

---

[2] On July 11, 2015, Plaintiffs filed a "Motion for Partial Summary Judgment" (A.
971-85), which was opposed by the JGL Defendants (A. 71-85), and was
ultimately stricken by Judge Messitte as an unauthorized surreply.  Specifically,
Judge Messitte held that:

> Then about a month after the JGL Defendants filed their Reply,
> Plaintiffs filed what they styled as a "Motion for Partial Summary
> Judgment."  The latter pleading by Plaintiffs, however, is nothing
> more than an unauthorized surreply.  But even viewed as an
> independent Motion, the Motion, while reciting the standards for
> determining a motion for summary judgment, does not begin to
> explain why no genuine issue of material fact might exist as to
> Plaintiffs' copyright claim, such that Plaintiffs should be entitled to
> summary judgment.  Indeed, the Motion simply responds one more
> time to arguments raised by the JGL Defendants in their Motion to
> Dismiss and in their reply to Plaintiff's Opposition to that Motion.
> Since the Court construes Plaintiffs' Motion for Partial Summary
> Judgment for what it really is, an unauthorized repetitive surreply to
> the JGL Defendants Motion to Dismiss, the Court will strike the
> Plaintiffs' Motion.

(A. 936).

But what we have here is potentially what appears to be a frivolous case filed in federal court inconsistent with Federal Rule of Civil Procedure 11 and the Court is quite concerned that that sort of ploy if indeed that is what's happened here.  The one countenanced by the attorney for the husband in this case or by him has somehow been meant to create leverage in the state court domestic relations dispute. What is apparent to the Court in this case that in effect Donald Bailey, the husband hiding behind the corporations, has undertaken to sue, that is, to put pressure on not just the wife, but her attorney.  That's really what has happened here.  That the wife's attorney has been put on the defensive as now to the Court's surprise had to withdraw from the case because of what has happened in this litigation.  And the Court then feels that this is the kind of activity that simply needs to be confronted under Federal Rule 11 so that this kind of extramural type of activity does not bear on the merits of a divorce legitimate or otherwise.

* * *

The important thing is that the present case strongly suggests that it was brought for an improper purpose, such as to harass, cause unnecessary delay, needlessly increase the costs of litigation and I would say beyond that to try to knock the wife's attorneys out of the game, if you will, by bringing this extramural type action against him.

* * *

All right. The Court is not entering an order then immediately pursuant to its decision.  I will leave open for ten days whether or not the defendants wish to file a motion for sanctions.  So the case remains open for that amount [of time].  The issue of sanctions would potentially involve attorneys' fees and whatever attendant costs are involved against counsel, Mr. Chandler, against Mr. Donald Bailey and against the two corporations and we'll see where we come out with that.

(A. 387-88, 393).

On August 13, 2015, the JGL Defendants filed a Rule 11 Motion for

Sanctions.[3]    (A. 106-312).    The next day, Judge Messitte issued an Order scheduling a hearing on the Rule 11 Motion for January 5, 2016, and directing Plaintiffs to "SHOW CAUSE in writing as to why Donald Bailey, Sr., as CEO and controlling shareholder of Plaintiff corporations, should not be held personally liable for such sanctions as may be imposed on Plaintiff corporations by reason of piercing the corporate veil." (A. 313).

After extensive briefing by the parties (*See* A. 4-7), including the submission of Affidavits by counsel for the JGL Defendants attesting to the necessity of the legal services rendered and the reasonableness of the fees charged (A. 296-310, 542-50, 883-91), on March 21, 2016, Judge Messitte issued a Final Order: (1) granting the JGL Defendants' Motion to Dismiss; (2) dismissing Plaintiffs' copyright infringement and misappropriation of trade secrets claims; (3) striking Plaintiffs' Motion for Summary Judgment as an unauthorized surreply; and (4) granting the JGL Defendants' Rule 11 Motion for Sanctions, thereby awarding them $22,834.40 in attorneys' fees and costs.  (A. 968-69).  Thereafter, Plaintiffs filed a timely Notice of Appeal to this Court.

---

[3] On June 18, 2015 (i.e., prior to the August 3, 2015, Motions Hearing), counsel for the JGL Defendants sent Mr. Chandler (counsel for the Plaintiffs) a letter, pursuant to Federal Rule of Civil Procedure 11(c)(2), requesting that the Plaintiffs dismiss their frivolous litigation within 21 days, and attaching the proposed Motion for Sanctions.  (A. 109).  In response, on July 11, 2015, Mr. Chandler wrote the undersigned counsel, refusing to voluntarily dismiss the Complaint. (A. 111).

III.    **SUMMARY OF ARGUMENT**

The United States District Court for the District of Maryland correctly granted the JGL Defendants' Motion to Dismiss, as: (1) Judge Messitte, pursuant to the *Rooker-Feldman* doctrine, properly declined to exercise subject matter jurisdiction over Plaintiffs' claims, as the discovery disputes which formed the basis of the litigation were previously raised and decided by the Circuit Court for Anne Arundel County as part of the Divorce Litigation (A. 938-39, 943-45); (2) Plaintiffs' have failed to state a valid cause of action for copyright infringement, as the JGL Defendants' receipt of the records in question, and their production back to Donald Bailey in response to written discovery propounded in the Divorce Litigation, constitutes a "fair use" under 17 U.S.C.A. § 107; and (3) Plaintiffs have failed to state a valid cause of action for misappropriation of trade secrets under Md. Code Ann., Com. Law §§ 11-1201 *est. seq.*, because the Complaint is devoid of facts establishing reasonable efforts to maintain the secrecy of the documents in question or that the documents were obtained through improper means.  (A. 9-23).

Similarly, the United States District Court for the District of Maryland correctly granted the JGL Defendants' Rule 11 Motion for Sanctions, as: (1) this litigation was brought and maintained for an improper purpose (namely, to harass the JGL Defendants and as an attempted end-run around the discovery rulings in the Divorce Litigation) in violation of Rule 11(b)(1); (2) the claims alleged in this

litigation were not warranted by existing law or by a non-frivolous argument for
extending, modifying or reversing existing law in violation of Rule 11(b)(2); (3)
the entry of sanctions against Donald Bailey (in addition to the Plaintiffs and their
counsel) was appropriate, as it is undisputed that Mr. Bailey had 100% control over
Plaintiffs, which were acting as his alter-ego; and (4) the $22,834.40 awarded to
the JGL Defendants was appropriate given the reasonableness of the undersigned
counsels' fees, the minimum amount needed to deter future frivolous filings,
Plaintiffs' ability to pay and the nature of the Rule 11 violations at issue.  (A. 296-
310, 542-50, 883-91, 941-66).

## IV.    ARGUMENT

### (A)    The United States District Court for the District of Maryland Correctly Granted the JGL Defendants' Motion to Dismiss

#### (1)    Standard of Review

This Court reviews, *de novo*, a District Court's grant of a motion to dismiss.
*Cruz v. Maypa*, 773 F.3d. 138, 143 (4th Cir. 2014); *Turloch v. Freech*, 275 F.3d
391, 399 (4th Cir. 2001).    "To survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to 'state a claim to relief that is
plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell
Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The plausibility standard
is not akin to a 'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 570). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678. Ultimately, determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

(2)     The United States District Court Properly Declined to Exercise Jurisdiction over this Action

While the Supreme Court has exclusive appellate jurisdiction over state court judgments under 28 U.S.C. § 1257, "lower federal district courts generally are not empowered to review state court proceedings..." *Mathis v. Goldberg*, 538 Fed. App'x. 310, 311 (4th Cir. 2013). Rather "jurisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court."[4] *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997) (citing *District of Columbia Ct. App. v. Feldman*, 460 U.S. 462, 482-86 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923)); *see also Friedman's Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002) (quoting *Jordahl v. Democratic Party of Va.*, 122 F.3d 191, 196 (4th Cir. 2002).

As this Court further explained in *Davani v. Virginia Dept. of Transp.* "the *Rooker-Feldman* doctrine applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state

---

[4] This proposition has come to be known as the "*Rooker-Feldman* doctrine."

court's decision itself." 434 F.3d 712, 713 (4th Cir. 2006); *accord Exxon Mobil Corp., v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). The doctrine bars "lower federal courts from considering not only issues raised and decided in the state courts, but also issues that are 'inextricably intertwined' with the issues that were before the state court." *Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir. 2005) (quoting *Feldman*, 460 U.S. 462, 486). An issue is inextricably intertwined when it "was not actually decided by the state court but where 'success on the federal claim depends upon a determination that the state court wrongly decided the issues before it.'" *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000) (quoting *Plyler*, 127 F.3d at 731).

In the instant case, the United States District Court for the District of Maryland correctly determined that Donald Bailey (acting through Plaintiffs) had improperly filed this litigation in an attempt to circumvent the still pending Circuit Court for Anne Arundel County discovery rulings, and to gain an unfair advantage in the Divorce Litigation. Specifically, as Judge Messitte aptly noted:

> The Court deems the present action for alleged copyright infringement and theft of trade secrets as nothing more than a thinly veiled, too-clever-by-half effort to gain an unfair advantage in a state court proceeding. The entire issue of the actions of Geraldine Bailey, Mr. Friedman, and JGL vis-à-vis Mr. Bailey's documents could have been, should have been, and indeed, essentially had been, decided by Judge Asti in the state divorce proceedings. Were there any doubt as to the scope of her ruling – whether she meant to leave the Motion for Protective Order unresolved while denying the Motion to Quash Subpoena (this Court believes she did not intend to do so) – Judge

Asti was the proper decider.    The present suit, totally without justification, bypassed the single, direct route, and as a result, Mrs. Bailey was deprived of her counsel, inordinate delay resulted, Mr. Friedman and JGL lost an employment opportunity, and what is more important, suffered considerable expense and harassment, quite possibly as well injury to their professional reputations.

* * *

What clinches the sham nature of the present suit is that the state court actually did consider Mr. Bailey's assertions of the need for protection of his alleged trade secrets and national security materials.    When Mrs. Bailey and Mr. Friedman sought similar materials in connection with the deposition of a bank official with respect to Mr. Bailey's corporate accounts, Mr. Bailey sought protection of trade secrets and national security concerns in his "Motion for Protective Order and to Quash Subpoena *Duces Tecum* to Protect Trade Secrets, Confidential Information and Proprietary Information."    That Motion sought a broad protective order covering all trade secrets, proprietary information, privileged information, and financial information.    It should be remembered that, up to that point, Mr. Bailey had not only stonewalled information about his income, he had also refused to answer interrogatories or produce documents related to the companies he owned an interest in, including the corporate Plaintiffs here.  Judge Asti denied Mr. Bailey's Motion… and eventually granted Mrs. Bailey's motion to compel Mr. Bailey to answer interrogatories and produce documents, although – yet again – Mr. Bailey and his attorney sought no further order of protection from the state judge.

* * *

The inescapable fact is that the copyright and trade secret claims in this suit were nothing more than a crafty attempt to pursue in parallel litigation in federal court an issue that was either already decided by the state court or which could have been or should have been for the state court to decide, namely access to and use of the purportedly sensitive materials relevant to the determination of marital assets in the divorce proceeding.    In sum, despite the superficial federal question nature of this suit, the real purpose is plainly a domestic relations issue that belongs to the Maryland state court.    It does not belong in federal court.

(A. 938-39, 943-45).

Plaintiffs' improper purpose in bringing this litigation is highlighted by the very assertions in their Complaint, wherein they seek the return or destruction of the documents that were produced in the Divorce Litigation and *denied* protection by the state court. (A. 18-22, 265). Since the Circuit Court for Anne Arundel County had jurisdiction over the discovery in the Divorce Litigation, it is up to that court, alone, to have determined whether the parties and their attorneys were required to return or destroy the records obtained from the martial home. *See Gallagher Evelius & Jones, LLP v. Joppa Drive-Thru, Inc.,* 195 Md. App. 583, 596, 7 A.3d 160, 167 (2010) ("In addition to having been granted specific powers under the discovery rules, the circuit court also has the inherent power to control and supervise discovery as it sees fit."). Accordingly, as Judge Messitte correctly determined, it would have been improper for the United States District Court for the District of Maryland to have intervened in the discovery in the divorce action.

In fact, it is well-established that Federal courts will not generally entertain domestic relation cases. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Mansell v. Mansell*, 490 U.S. 581, 587 (1989); *accord Cole v. Cole*, 633 F.2d 1083, 1087 (4th Cir. 1980); *DuBroff v. DuBroff*, 833 F.2d 557, 561 (5th Cir. 1987); *Dunn v. Cometa*, 238 F.3d 38, 42 (1st Cir. 2001). As noted by Judge Messitte, the rationale for this rule is that these matters "are within the purview of the state

because intimate personal issues, often highly emotional in nature, characterize domestic relations proceedings, which are far better suited for local courts rather than federal courts to resolve." (A. 940).

Accordingly, the United States District Court of the District of Maryland properly declined to exercise subject matter jurisdiction over Plaintiffs' claims, thereby dismissing the litigation, as "it cannot be doubted that discovery related to the existence and nature of marital assets in a divorce proceeding is four-square a matter of state rather than federal court concern." (A. 941).

     (3)    <u>Dismissal Was Also Proper as Plaintiffs' Complaint Failed to State a Claim for Copyright Infringement or Misappropriation of Trade Secrets</u>

     (a)    <u>Copyright Infringement</u>

As Judge Messitte correctly held in footnote 24 of his Opinion, "The JGL Defendants contend that, even assuming *arguendo* Plaintiffs have plausibly alleged that they own a valid copyright, and that the JGL Defendants have infringed upon the exclusive control of reproduction and distribution of said copyright, the Complaint must be dismissed because a valid fair use defense, i.e. its use in litigation, appears on the face of the Complaint. The Court agrees." (A. 946).

Specifically, the equitable doctrine of fair use has been codified as follows:

Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phono records or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching

(including multiple copies for classroom use), scholarship, or
research, is not an infringement of copyright. In determining whether
the use made of a work in any particular case is a fair use the factors
to be considered shall include--

(1) the purpose and character of the use, including whether such use is
of a commercial nature or is for nonprofit educational purposes;
(2) the nature of the copyrighted work;
(3) the amount and substantiality of the portion used in relation to the
copyrighted work as a whole; and
(4) the effect of the use upon the potential market for or value of the
copyrighted work.

The fact that a work is unpublished shall not itself bar a finding of fair
use if such finding is made upon consideration of all the above
factors.

17 U.S.C.A. § 107. Additionally, although there is a statutory guide, the doctrine

is to be applied as "an equitable rule of reason, for which no generally applicable

definition is possible." *Bouchat v. Baltimore Ravens Ltd. P'ship,* 619 F.3d 301,

308 (4th Cir. 2010), citing *Sundeman v. Seajay Soc'y, Inc.,* 142 F.3d 194, 202 (4th

Cir. 1998).

Moreover, the "fair use inquiry is 'not to be simplified with bright-line rules,

for the statute, like the doctrine it recognizes, calls for case-by-case analysis.'"

*Bouchat,* 619 F.3d at 308, citing *Campbell v. Acuff–Rose Music, Inc.,* 510 U.S.

569, 577 (1994). This Court has explained the fair use defense as follows:

Section 106 of the Copyright Act grants "a bundle of exclusive rights
to the owner of the copyright," including the rights "to publish, copy,
and distribute the author's work." These rights, however, are "subject
to a list of statutory exceptions, including the exception for fair use
provided in 17 U.S.C. § 107." Fair use is a complete defense to

infringement. In other words, "the fair use of a copyrighted work ... is not an infringement of copyright."

*Bouchat,* 619 F.3d at 307 (Internal Citations Omitted).

In the instant case, there is no commercial or for-profit use alleged whatsoever. Rather, the Complaint simply states that the JGL Defendants received documents from their client and produced them to their owner (Mr. Bailey) and a retained expert during the normal course of the Divorce Litigation. (A. 11-18). Moreover, until the filing of the First Federal Case, *no one* other than those involved in the Divorce Litigation knew that Mr. Bailey had left his copyrighted materials behind when he voluntarily left the marital home.[5]  And, no one knew that those documents had been produced back to him. In other words, before the filing of this litigation and the First Federal Case, there could have been no possible devaluing of the copyrighted material or potential economic harm. It was the filing of these public lawsuits (which were not filed under seal) that, if anything, have risked the potential for the government to discover that Mr. Bailey's systems have not been kept secure, as the Plaintiffs complain. This fact was not lost on Judge Messitte, who stated in his Memorandum Opinion that:

---

[5] Plaintiffs, in their Brief, repeatedly assert that Mr. Bailey was forced from the martial home as a result of police intervention. However, in ¶ 21 of the Complaint, Plaintiffs affirmatively state that "Sadly, by agreement and not wishing to displace his family, Mr. Bailey left the home which he had built…"  (A. 15).  The First Federal Case also contained a similar allegation of voluntary departure. (A. 277).

> Incredibly, the corporate Plaintiffs, supposedly concerned about the "national security" aspects of trade secrets and copyrighted material, have never filed a Motion to Seal in the present case. Prior to the filing of this suit and the First Federal Case, only the parties to the divorce proceedings, Mr. Chandler, the corporate Plaintiffs here, and Mr. Bailey, were aware that the JGL Defendants were in possession of supposedly sensitive corporate materials. If Plaintiffs' alleged trade secrets were, in fact, as vulnerable to hackers as Plaintiffs' counsel has contended, their own actions in filing the Federal suits may only have increased that risk. Not only is this laxness inconsistent with the legitimate objective of protecting trade secrets, it is another reason leading the Court to conclude that the primary purpose of both this case and the First Federal case was to gain leverage in the divorce proceedings.

(A. 951-52).

Furthermore, and significantly, courts, including this Court, addressing similar situations have found that the use of copyrighted information during litigation constitutes a "fair use", thus barring a subsequent infringement claim. *See Bond v. Blum,* 317 F.3d 385, 396 (4th Cir. 2003) (holding that the defendant's use of the plaintiff's entire copyrighted work in a child custody proceeding "does not undermine the protections granted by the [Copyright] Act but only serves the important societal interest in having evidence before the factfinder."); *Jartech, Inc. v. Clancy,* 666 F.2d 403 (9th Cir. 1982) (holding that copying of 5 motion pictures by photographing the screen images every few seconds and recording the soundtracks in their entirety as part of a nuisance abatement proceeding against an adult film theater was fair use); *Stern v. Does*, 978 F. Supp. 2d 1031, 1047-48 (C.D. Cal. 2011), *aff'd* sub nom. *Stern v. Weinstein*, 512 F. App'x 701 (9th Cir.

2013) ("Reproduction of copyrighted material for use in litigation or potential litigation is generally fair use, even if the material is copied in whole."); *Ty, Inc. v. Publications Intern. Ltd.,* 292 F.3d 512 (7th Cir. 2002). Accordingly, Judge Messitte correctly held that Count I of the Complaint must be dismissed, as a matter of law, as the copying of Plaintiffs' records as part of the Divorce Litigation was a "fair use."

(b)    Misappropriation of Trade Secrets

Similarly, Count II of the Complaint (A. 19-21) fails to state a claim for misappropriation under the Maryland Uniform Trade Secrets Act, Md. Code Ann., Com. Law §§ 11-1201 through 11-1209. Specifically, the records abandoned in the marital home when Mr. Bailey moved out (A. 15, ¶ 21) do not fit the Act's definition of a "trade secret" because they were not "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." §11-1201(e)(2). That is, the Complaint (A. 9-23) is devoid of allegations establishing reasonable efforts to maintain the secrecy of the documents and records in question. Plaintiffs do not allege that a process to protect the information was implemented, that non-disclosure agreements, encryption or similar efforts to maintain the secrecy of the information were employed and/or that physical barriers, such as locks or passwords, were used to keep the relevant information secure. In fact, the

Complaint alleges absolutely no efforts to keep the materials secret or secure before they were allegedly misappropriated from the marital home.

Plaintiffs have also failed to plead facts establishing actionable misappropriation. Specifically, under the Maryland statute:

> (c) "Misappropriation" means the:
> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret **was acquired by improper means**; or
> (2) Disclosure or use of a trade secret of another without express or implied consent by a person who:
> (i) **Used improper means** to acquire knowledge of the trade secret; or
> * * *

Md. Code Ann., Com. Law § 11-1201. (Emphasis Added). The definition of "improper means" is of the utmost importance to this case, as the Court of Appeals of Maryland has explained that, "MUTSA [Maryland Uniform Trade Secrets Act] states that a trade secret is acquired by 'improper means' when it has been acquired by 'theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy, or espionage through electronic or other means.'" *LeJeune v. Coin Acceptors, Inc.,* 381 Md. 288, 313, 849 A.2d 451, 466 (2004), citing Md. Code Ann., Com. Law § 11–1201(b).

In the instant case, Plaintiffs fail to allege any facts that would satisfy the statute's definition of acquiring trade secrets through "improper means." They allege no theft, bribery, misrepresentation, breach of a duty to maintain secrecy or espionage. Quite the contrary, Plaintiffs allege that the material in question was

voluntarily left behind in the marital home. (A. 15).   Accordingly, since the Complaint is devoid of allegations establishing that the information in question was a trade secret and/or misappropriated, Count II is also subject to dismissal, as a matter of law, for failure to state a claim for which relief can be granted.

### (B)    Plaintiffs Are Not Entitled to Summary Judgment

In their Brief, Plaintiffs request that this Court enter summary judgment in their favor.  This request is improper for two reasons.  First, as a practical matter, at the conclusion of the August 3, 2015, hearing Judge Messitte granted the JGL Defendants' Motion to Dismiss, declining to assume subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine and leaving the matter open for the limited purpose of addressing the issue of Rule 11 Sanctions.  (A. 393).  That ruling effectively mooted Plaintiffs' previously filed Motion for Summary Judgment.  Furthermore, as set forth in footnote 2 *supra*, Judge Messitte construed Plaintiffs' Motion for Summary as an unauthorized surreply to the JGL Defendants' Motion to Dismiss, and struck the filing.  (A. 968).

Second, Plaintiffs are not entitled to summary judgment, as a matter of law, as material disputes of fact existed as to the basis of Plaintiffs' Motion that precluded the entry of judgment in the instant case.[6]  In fact, material disputes of

_____

[6] The existence of disputes of fact for purposes of a Motion for Summary has no effect on the JGL Defendants' Motion to Dismiss, as the purpose of a Motion to Dismiss is to test the sufficiency of the pleading; and when ruling on a Motion to

fact exist as to almost every issue raised in the Complaint and in Plaintiffs' Motion for Summary Judgment. For example, Exhibit 2 to the Complaint (A. 25-26) states that the copyright for "Per Diemazing! Travel Management System version 2.13.02" was transferred by written agreement to Donald Bailey, a non-party to this lawsuit. Similarly, Exhibit 3 to the Complaint (A. 27-28) states that the copyright for "Zegato" was also transferred to Donald Bailey, and that he is the "owner of exclusive rights." Thus, according to the exhibits attached to the Complaint, Donald Bailey, and not Plaintiffs, is the owner of the "Per Diemazing! Travel Management System version 2.13.02" and "Zegato" copyrights, *i.e.*, the copyrights that JGL Defendants have allegedly infringed upon and which form the basis of the claims alleged by Plaintiffs.

Conversely, attached to Plaintiffs' Motion for Summary Judgment are two Assignments (A. 986-87), allegedly transferring title and interest in the copyright for "Zegato Automated Travel Systems" to Plaintiffs. Thus, Plaintiffs' own documents contradict the exhibits to their Complaint, which indicate that Donald Bailey is the owner of the copyrights at issue.

Yet another contradiction in Plaintiffs' own Exhibits is the identification of

---

Dismiss the court must "'accept the well-pled allegations of the complaint as true,' and 'construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.'" *Hughes v. Progressive Direct Ins. Co., Inc.*, 2012 WL 4480726 at * 2 (D. Md. September 27, 2012); citing *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006) and *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir.1997).

the specific copyrights. Specifically, the copyrights identified in the exhibits to the Complaint are "Per Diemazing! Travel Management System version 2.13.02" and "Zegato" (A. 25-28), while the Assignments attached to Plaintiffs' Motion for Summary Judgment (A. 986-87) identify a different copyright entitled "Zegato Automated Travel Systems." Furthermore, the Certificates of Registration attached to the Complaint (A. 25-28) contain Registration Nos. TX03-993-041and TX5-050-505, while Mr. Bailey's Affidavit (attached to Plaintiffs' Reply to the JGL's Defendants' Opposition to the Motion for Summary Judgment) states that he transferred copyright TXu001209199 (A. 326). Given the conflicting information and ambiguities referenced above, it is not even clear which copyrights the JGL Defendants allegedly infringed upon, or even who owns said copyrights.[7]

Ultimately, as set forth above, material disputes of fact exist (not the least of which are disputes as to the specific copyrights at issue and who owns them) which

_____

[7] Additionally, attached as Exhibit 1 to the JGL Defendants' Opposition to Plaintiffs' Motion for Summary Judgment is the Affidavit of Stephen Friedman, which establishes additional disputes of material fact. (A. 83-85). Specifically, as set forth therein: (1) at no time have the JGL Defendants uploaded any information belonging to Plaintiffs onto the internet; (2) at no time have the JGL Defendants distributed and/or provided any information, computer programs and/or records belonging to Plaintiffs to any third parties, with the exception of Mr. Bailey's divorce counsel, Mr. Nugent, in response to written discovery requests propounded by Mr. Bailey in the Divorce Litigation; (3) at no time did the JGL Defendants steal and/or misappropriate any property belonging to Plaintiffs; (4) at no time did the JGL Defendants publish, on the internet or otherwise, any computer programs belonging to Plaintiffs and/or Mr. Bailey; and (5) at no time did the JGL Defendants permit any third parties to review, copy and/or inspect any computer programs belonging to Plaintiffs and/or Mr. Bailey. *Id.*

precluded the entry of summary judgment, as a matter of law.

**(C)    The United States District Court correctly granted the JGL Defendants' Rule 11 Motion for Sanctions**

(1)    Standard of Review

"A district court's ultimate decision to impose Rule 11 sanctions, and the quality and amount of the sanctions imposed, is reviewed under an abuse of discretion standard." *Miltier v. Downs*, 935 F.2d 660, 663 (4th Cir. 1991) (citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384 (1990)). "In conducting such a review we [the Fourth Circuit Court of Appeals] look to the findings of fact of the district court as to whether a reasonable attorney in like circumstances could believe her challenged conduct to be, as certified, well-grounded in fact and law." *Miltier*, 935 F.2d at 663 (citing *Straitwell v. National Steel Corp.,* 869 F.2d 248, 253 (4th Cir. 1989)).

With regard to the nature of the Rule 11 sanctions entered:

The amount of expense borne by opposing counsel in combatting frivolous claims may well be an appropriate factor for a district court to consider in determining whether a monetary sanction should issue and if so, in what amount. However, it is clear that the primary, or "first" purpose of Rule 11 is to deter future litigation abuse. A district court can and should bear in mind that other purposes of the rule include compensating the victims of the Rule 11 violation, as well as punishing present litigation abuse, streamlining court dockets and facilitating court management. But the amount of a monetary sanction should always reflect the primary purpose of deterrence.

*In re Kunstler*, 914 F. 2d 505, 522-23 (4th Cir. 1990) (Internal Citations Omitted).

Ultimately, in choosing a sanction a court should consider "the reasonableness of

the opposing party's attorney's fees, the minimum to deter, the ability to pay, and

factors related to the severity of the Rule 11 violation." *Miltier*, 935 F.2d at 665

(citing *Kunstler*, 914 F. 2d at 523).

> (2)   The Rule 11 Sanctions Entered by the District Court
>        Were Warranted

Rule 11(b) of the Federal Rules of Civil Procedure provides, in relevant part,

that, in filing any pleading or motion, the attorney or unrepresented party must

certify that:

> (1) the filing "is not being presented for any improper purpose, such
> as to harass, cause unnecessary delay or needlessly increase the cost
> of litigation; (2) the claims, defenses and other legal contentions are
> warranted by existing law or by a non-frivolous argument for
> extending, modifying or reversing existing law or for establishing new
> law and (3) the factual contentions have evidentiary support or, if
> specifically so identified, will likely have evidentiary support after a
> reasonable opportunity for further investigation or discovery."

The maintenance of a legal position is sanctionable when, in "applying a standard

of objective reasonableness, it can be said that a reasonable attorney in like

circumstances could not have believed his actions to be legally justified." *Hunter*

*v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002). Improper purposes

under the Rule include "the filing of suit as leverage in separate proceedings, to

obtain discovery for use in those other proceedings, and to embarrass, intimidate,

or harass." *Myers v. Sessoms & Rogers, P.A.*, 781 F. Supp. 2d 264, 268 (E.D.N.C. 2011), citing *In re Kunstler*, 914 F.2d 505, 519 (4th Cir. 1990).

In the instant case, Judge Messitte correctly concluded that sanctions were warranted, as the purpose of this litigation (and the First Federal Case) was to circumvent the Circuit Court for Anne Arundel County's discovery rulings and to gain an unfair advantage in the Divorce Litigation for Donald Bailey, Plaintiffs' majority owner and CEO; Plaintiffs, allegedly concerned with the security of their records, never sought to seal the filings in this case; and Plaintiffs' counsel, who also serves on their Board of Directors and is a 10% owner of the companies, failed to make the appropriate factual and legal inquiries before filing suit for misappropriation of trade secrets and copyright infringement against the JGL Defendants.  Specifically, Judge Messitte stated that:

-    This litigation was a "sham", designed to gain an improper advantage in the Divorce Litigation and to avoid the discovery rulings issued by Judge Asti.  (A. 941-45)

-    "Mr. Chandler, counsel for the corporate Plaintiffs here, was actively aware of and indeed involved to a considerable extent in the state divorce proceedings, and thus had ample reason to know that his actions in the First and Second Federal Cases would create leverage for Mr. Bailey in the divorce proceedings." (A. 949).

-    "Incredibly, the corporate Plaintiffs, supposedly concerned about the 'national security' aspects of trade secrets and copyrighted material, have never filed a Motion to Seal in the present case.... Not only is this laxness inconsistent with the legitimate objective of protecting trade secrets, it is another reason leading the Court to conclude that

the primary purpose of both this case and the First Federal case was to gain leverage in the divorce proceedings." (A. 951-52).

- "The harassing nature of the suite is further evidenced by the frivolous nature of the claims. The idea that a spouse, by taking papers pertaining to her husband's business that are in her home and by sharing them with her attorney, risks violating federal copyright law or Maryland Trade secret law…is nothing short of ridiculous." (A. 952).

- "The harassing nature of this suit is further exemplified by Plaintiffs' contentious allegations that the JGL Defendants engaged in criminal activity…. Although Judge Chuang, in dismissing the [First Federal] case, aptly pointed out the inapplicable and frivolous nature of such claims, the scattered filings in the present case, for some inexplicable reason, continue to cite 18 U.S.C. § 1832, as well as other federal criminal statutes, as legal justification for Plaintiffs' civil claims…. Mr. Chandler's ineptitude in pleading the criminal statute as a civil claim against Mrs. Bailey, then continuing to allude to it in the Second Federal Case not only suggests harassment, it clearly reflects the shallowness of his legal investigation in both the state and federal litigation." (A. 952-53).

- "While the Court's primary concern under Rule 11(b) has been with the improper purpose of this suit, its analysis also supports a finding that Plaintiff's counsel, Mr. Chandler, failed to conduct a reasonable inquiry in the factual and legal background of the state divorce proceeding or, what is more likely the case and what is worse, that he knew full well what was going on in the state proceedings (e.g. he was actively commenting on the proposed protective orders being discussed and simply chose to disregard what he knew). * * * For Mr. Chandler – who was, by the way one of the three directors on Plaintiff Aldmyr's Board of Directors…to follow up two weeks later [after Judge Asti denied the Motion to Quash and for Protective Order in the Divorce Litigation] with a suit in federal court based on the JGL Defendants' possession and copying of the same documents, demonstrates an unjustifiable lack of investigation, if not outright malice, on Mr. Chandler's part." (A. 953-55).

- 25 -

-      "Ultimately, the Court can only express astonishment at Mr.
       Chandler's profound lack of appreciation of the significance of the
       domestic relations proceeding… The facts of the Complaint drafted
       by Mr. Chandler were, as stated multiple times already, nothing more
       than the veiled rehashing of a discovery dispute that has taken and
       was still taking place within the context of the divorce proceedings."
       (A. 956).

Accordingly, for the reasons relied upon by Judge Messitte, sanctions are

warranted in this case pursuant to Rule11(b)(1)-(3), as: (1) the case was brought

for an improper purposes, and in particular to harass the JGL Defendants and to

attempt to circumvent the discovery rulings in the Divorce Litigation; (2) Plaintiffs

claims were not warranted by existing law, as the Complaint is devoid of facts

establish the existence or misappropriation of trade secrets, and the production of

the records in question back to Mr. Bailey in response to his written discovery

requests in the Divorce Litigation constitutes "fair use"; and (3) Mr. Chandler

failed to conduct a reasonable inquiry into the factual background of the Divorce

Litigation (including the denial of Mr. Bailey's Motion to Quash and for Protective

Order) prior to instituting this litigation.

(3)    Sanctions Were Properly Entered Against Plaintiffs, Their
       Counsel and Their Majority Owner and CEO, Donald Bailey

Pursuant to Federal Rule of Civil Procedure 11(c)(1), "If, after notice and a

reasonable opportunity to respond, the court determines that Rule 11(b) has been

violated, the court may impose an appropriate sanction on any attorney, law firm,

or party that violated the rule or is responsible for the violation." In the instant, as

set forth above, sanctions against Plaintiffs and their counsel "are unquestionably appropriate."[8] (A. 957).

Additionally, as set forth in great detail by Judge Messitte in his Memorandum Opinion (A. 957-64), sanctions were also properly entered against Donald Bailey, individually, as: (1) he was the CEO and majority shareholder of Plaintiffs and was the person who directly benefited from this collateral litigation in terms of the affect it had on the Divorce Litigation (A. 958-61); (2) Federal courts can exercise jurisdiction over individuals, without raising due process concerns, when the individual in question is the alter ego of a corporation that is a party to the lawsuit (A. 958, citing *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 433 (4th Cir. 2011)); (3) "with 100% control [of Plaintiffs], Mr. Bailey had authorized the instant lawsuit" (A. 961); and (4) Plaintiffs had not maintained corporate formalities (which is one of the factors to

---

[8] Plaintiffs, in their Brief, argue that the JGL Defendants failed to comply with Rule 11(c)(2), as the proposed Motion for Sanctions served on their counsel was not <u>identical</u> to the motion that was ultimately filed in the U.S. District Court. This argument is, however, without merit, as the revisions in question were either stylistic in nature or reflected events (such as the August 3, 2015, Motions Hearing and the filing of Plaintiffs' Motion for Summary Judgment) that occurred after the Motion for Sanctions was originally served on Mr. Chandler. None of the edits/revisions were substantive in nature, nor do they excuse Plaintiffs failure to have withdrawn/dismissed the litigation after they, and their counsel, were put on notice that the contentions in the Complaint lacked factual and legal support and that the case was filed for an improper purpose. *See* Red-Lined copy of the JGL Defendants' Motion for Sanctions highlighting the revisions in question (A. 511-19) and footnote 25 of Judge Messitte's Memorandum Opinion (A. 947).

be considering in determining whether to pierce the corporate veil), as the entities had not filed tax returns for the years 2009-2014, nor did they keep current balance sheets, general ledgers and/or profit/loss statements (A. 97-98, 805, 961-62).

Ultimately, as Judge Messitte concluded, "Donald Bailey was, at all relevant times, the alter ego of the two corporate Plaintiffs here, and that he was the true part in interest responsible for initiating this suit to benefit himself in the state divorce proceeding. Since the 'corporate form is being used for wrongful purposes,' the Court pierces the corporate veil in this case in order to achieve an equitable result." (A. 962-63, Internal Citation Omitted).

(4)    The Award of $22,834.40 Was Appropriate, Given Plaintiffs'/Mr. Bailey's conduct, the Purpose of Rule 11 and the Reasonableness of the Fees sought

Rule 11(c)(4) provides that "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." In entering a monetary sanction, a court should consider: "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to

pay; and (4) factors related to the severity of the Rule 11 violation." *In re Kunstler*, 914 F. 2d at 522-23.

In the instant case, undersigned counsels' fees were reasonable, both in terms of the hourly rates charged ($150 p/hr for partner time and $125 p/hr for associate time) and the number of hours spent on the case. *See* Affidavits of Shirlie Norris Lake, Esq. (A. 296-310, 542-50, 883-91) and Judge Messitte's Memorandum Opinion (A. 963-66). Similarly, given that this is the second lawsuit filed by Mr. Bailey/his companies against the JGL Defendants, the $22,834.40 in fees incurred as a result of Mr. Bailey's actions is the minimum amount necessary to deter future frivolous lawsuits. Given that Plaintiffs have alleged that their computer program is worth $350,000,000 (A. 977, 979, 981), they surely have the ability to pay the $22,834.40 judgment. Finally, as detailed throughout this Brief and Judge Messitte's Memorandum Opinion (A. 919-67), Plaintiffs' have engaged in a pattern of harassing conduct, without legal justification, and for purposes of improperly affecting collateral state court litigation, and therefore have engaged in severe conduct that warrants the imposition of sanctions.

## VI.  CONCLUSION

Wherefore, for the reasons set forth above, the JGL Defendants respectfully request that this Court affirm the United States District Court for the District of Maryland's dismissal of Plaintiffs' complaint and the entry of Rule 11 sanctions, in

the amount of $22,834.40, against Plaintiffs, their counsel (James Chandler, Esq.) and their majority owner and controlling officer, Donald Bailey.

Respectfully submitted,

_____/s/_____
Shirlie Lake, Esq. (Fed. Bar No. 01705)
ECCLESTON & WOLF, P.C.
7240 Parkway Drive, 4th Floor
Hanover, MD 21076
Tel: (410) 752-7474,
Fax: (410) 752-0611
lake@ewmd.com
*Attorneys for Appellees*

_____/s/_____
Daniel Hodges, Esq. (Fed. Bar No. (28252)
ECCLESTON & WOLF, P.C.
7240 Parkway Drive, 4th Floor
Hanover, MD 21076
Tel: (410) 752-7474
Fax: (410) 752-0611
hodges@ewmd.com
*Attorneys for Appellees*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of June, 2016, a copy Appellees' Brief was served via electronic PACER filing, and by hand delivery, on:

James P. Chandler, Esq.
The Chandler Law Firm

1629 K Street, NW
Suite 300
Washington, D.C. 20006
*Attorney for Appellants*


                    /s/

Daniel R. Hodges, Esq. (Fed. Bar No. (28252)
ECCLESTON & WOLF, P.C.
7240 Parkway Drive, 4th Floor
Hanover, MD 21076
Tel: (410) 752-7474
Fax: (410) 752-0611
hodges@ewmd.com
*Attorneys for Appellees*